1
2
3
4
5
6
7
8
9                          IN THE UNITED STATES DISTRICT COURT
10                             FOR THE DISTRICT OF OREGON
11
   LISA MACY,                                    Civil No. 08-655-AA
12                                               OPINION AND ORDER
            Plaintiff,
13
        vs.
14
   MICHAEL J. ASTRUE,
15 Commissioner of Social Security,
16           Defendant.
17  _____
   Rory Linerud
18 Linerud Law Firm
   PO Box 1105
19 Salem, OR 97308
        Attorney for plaintiff
20
   Karin Immergut
21 United States Attorney
   District of Oregon
22 Britannia Hobbs
   Assistant United States Attorney
23 1000 S.W. Third Avenue Suite 600
   Portland, Oregon 97204-2902
24
   Daphne Banay
25 Special Assistant U.S. Attorney
   Social Security Administration
26 701 Fifth Avenue, Suite 2900 M/S 901
   Seattle, Washington 98104-7075
27        Attorneys for defendant
28

   Page 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff, Lisa Macy, brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), requesting judicial review of a final decision of the Commissioner denying her application for disability insurance benefits ("DIB") under Title II of the Act.  For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

PROCEDURAL BACKGROUND

On July 8, 2003, plaintiff filed an application for DIB. Tr. 12, 49.  The claim was denied initially (tr. 42), and on reconsideration (tr. 37).  Plaintiff appealed the decision and on September 14, 2005, an Administrative Law Judge ("ALJ 1") conducted a hearing at which time he heard testimony from two witnesses: plaintiff, who was represented by an attorney; and Eileen Lincicome, a vocational expert ("VE").  Tr. 245-273.  On December 14, 2005, ALJ 1 found plaintiff not disabled within the meaning of the Act.  Tr. 9-21.  On April 5, 2006, the Appeals Council denied plaintiff's request for review (tr. 4-6), making ALJ 1's decision the final agency decision.  See 20 C.F.R. §§ 404.981, 416.1481.  Plaintiff appealed the agency decision to district court.  On December 16, 2006, the court reversed and remanded the case to the Administrative Agency based on stipulation of the parties.  Tr. 295-96.

On September 18, 2007, a second Administrative Law Judge ("ALJ 2") conducted a hearing at which time she heard testimony from two witnesses: plaintiff, who was again represented by an attorney; and VE Susan Burkett ("VE 2").  Tr. 368-407.  On

Page 2 - OPINION AND ORDER

November 6, 2007, ALJ 2 found plaintiff not disabled within the meaning of the Act.  Tr. 281-91.  On March 28, 2008, the Appeals Council denied plaintiff's request for review (tr. 277-80), making ALJ 2's decision the final agency decision.  See 20 C.F.R. §§ 404.981, 416.1481.  On May 30, 2008, plaintiff appealed the final agency decision to this court.

## STATEMENT OF FACTS

At the time of the September 18, 2007 hearing, plaintiff was 45 years old and had a high school education.  Tr. 49, 68. Plaintiff's past relevant work experience includes working as a cleaner/housekeeper and a small products assembler.  Tr. 79-80.

Plaintiff alleges disability based on a combination of impairments including: pain and swelling of the lower back; inability to perform household chores; inability to sit or stand for extended periods; need to lay down several times each day; frequent falling (due to back pain and/or weakness or numbness in legs); daily crying spells; depression; obesity; and side effects from medicine (including drowsiness, fatigue, irritability, and diminished concentration, focus and attention).  Doc 10, pp. 2-3.  Plaintiff alleges an onset date of February 26, 2003.  Tr. 49.

## STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."   Richardson v. Perales, 402 U.S. 389, 401

(1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

197, 229 (1938)).   The court must weigh "both the evidence that

supports and detracts from the Secretary's conclusions."

Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to

establish disability.   Howard v. Heckler, 782 F.2d 1484, 1486

(9th Cir. 1986).   To meet this burden, plaintiff must

demonstrate an "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or

mental impairment which can be expected . . . to last for a

continuous period of not less than 12 months. . . ."   42 U.S.C.

§ 423(d)(1)(A).

The Secretary has established a five-step sequential

process for determining whether a person is disabled.   Bowen v.

Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502,

416.920.   First the Secretary determines whether a claimant is

engaged in "substantial gainful activity."   If so, the claimant

is not disabled.   Yuckert, 482 U.S. at 140; 20 C.F.R.

§§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant

has a "medically severe impairment or combination of

impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§

404.1520(c), 416.920(c).   If not, the claimant is not disabled.

In step three the Secretary determines whether the

impairment meets or equals "one of a number of listed

impairments that the Secretary acknowledges are so severe as to

preclude substantial gainful activity." Id.; see 20 C.F.R.

§§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can work, she is not disabled.  If she cannot perform past relevant work, the burden shifts to the Secretary.  In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

**DISCUSSION**

1. The ALJ's Findings

At step one, ALJ 2 found plaintiff had not engaged in substantial gainful activity during the relevant time period. Tr. 286, Finding 2.

At step two, ALJ 2 found plaintiff had degenerative disc disease in her lumbar spine, a severe impairment.  Tr. 286, Finding 3.

At step three, ALJ 2 found plaintiff "does not have an impairment or combination of impairments that meets or medically equals the criteria of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  Tr. 287.  ALJ 2 then determined plaintiff's

residual functional capacity ("RFC")[1]:

> After careful consideration of the entire record, the undersigned finds the claimant's residual functional capacity allows her to perform a limited range of light work.  She is able to sit 3 to 6 hours for 15 minutes at a time during a fulltime 8-hour workday.  She is able to stand 3 to 6 hours for 10 minutes at a time during a fulltime 8-hour workday.  She is able to walk 3 to 6 hours for 15 minutes at a time during a fulltime 8-hour workday.  She is able to lift 10 pounds occasionally (i.e. up to one-third of the workday) and less than 10 pounds frequently (i.e. up to two-thirds of the workday).  She is able to carry 20 pounds occasionally.  She must avoid bending and twisting.  She is able to occasionally engage in crouching, kneeling, crawling and climbing.  She is able to push and/or pull with an initial force of 30 pounds and a sustained force of 25 pounds.  She should avoid hazards, unprotected heights and vibration.  Her ability to reach is limited with respect to exertion.  She is able to lift 10 pounds from floor to waist level and 5 pounds from floor to overhead.  She is sufficiently literate to understand simple directions.

Tr. 287.

At step four, ALJ 2 found plaintiff capable of performing past relevant work as a small products assembler or housekeeper. Tr. 290.

In the alternative, at step five, ALJ 2 found the Social Security Administration demonstrated plaintiff could work as a sporting goods assembler, an electronics worker - assembly semiconductor, and/or a garment sorter, each existing in significant numbers in the national economy.  Tr. 291.

2. Plaintiff's Allegations of Error

Plaintiff alleges the following errors: ALJ 2 erred in determining plaintiff's RFC; both ALJs were biased; ALJ 2 failed

---

[1] The RFC is what the claimant can do despite any particular limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).

1  to consider the combined effect of plaintiff's impairments and
2  fully develop the record; ALJ 2 improperly rejected plaintiff's
3  testimony; ALJ 2 erred in finding plaintiff could perform past
4  relevant work; and ALJ 2 erred in finding plaintiff could
5  perform the job of garment sorter.

6  A. Plaintiff's RFC

7       Plaintiff alleges ALJ 2 erred in determining plaintiff's
8  RFC.  ALJ 2 found plaintiff was able to lift 10 pounds
9  occasionally and less than 10 pounds frequently.  Tr. 287,
10 Finding 5.  Plaintiff argues ALJ 2 erroneously altered the
11 findings of the Physical Capacities Exam ("PCE") in finding
12 plaintiff could lift less than 10 pounds frequently.  In support
13 of this argument, plaintiff points to the results of the
14 November 18, 2002 PCE.  Tr. 226-41.  In that PCE, physical
15 therapist Karen Pagen ("Pagen") opined plaintiff could lift 1-10
16 pounds on an occasional basis and carry 11-20 pounds on an
17 occasional basis.  Tr. 226.  Pagen did not list any weight
18 plaintiff could lift on a frequent basis.  Id.  ALJ 2 gave
19 "significant weight" to Pagen's opinion evidence.  Tr. 289.
20 Thus, plaintiff argues she could not lift any weight on a
21 frequent basis.  Doc 10, pg. 16.

22      However, Pagen's opinion evidence is not the only evidence
23 in the record regarding plaintiff's lifting capabilities.  On
24 August 20, 2003, Douglas W. Lieuallen, M.D. examined plaintiff.
25 Tr. 192.  Dr. Lieuallen opined plaintiff "probably can't lift
26 more than 10 to 15 pounds without pain."  Tr. 193.  Dr.
27 Lieuallen did not give his opinion of what weight plaintiff
28 could lift on a frequent or occasional basis.  Tr. 192-93.

1    In addition, on September 29, 2003, nonexamining state

2  agency physician Linda Jensen, M.D. completed a Residual

3  Physical Functional Capacity Assessment ("RPFCA").  Tr. 199-204.

4  Although the RPFCA form contains an option for the doctor to

5  check a box stating claimant could lift and/or carry *less than*

6  10 pounds frequently, Dr. Jensen instead opined plaintiff could

7  lift and/or carry 10 pounds frequently and 20 pounds

8  occasionally.  Tr. 200.  On November 17, 2003, state agency

9  physician Martin Kahrli, M.D. affirmed Dr. Jensen's assessment

10  of plaintiff's lifting capabilities.  Tr. 204.

11    "It is the ALJ's responsibility to determine credibility

12  and resolve conflicts and ambiguities in the medical and non-

13  medical evidence; when the evidence is susceptible to more than

14  one rational interpretation, and one is provided, the ALJ's

15  conclusion must be upheld."  Bowser v. Commissioner of Social

16  Security, 121 Fed. Appx. 231, 243 (9th Cir. 2005).  The question

17  is not whether ALJ 2 could reasonably have found plaintiff

18  unable to lift any weight on a frequent basis, but rather

19  whether ALJ 2's finding that plaintiff could lift less than 10

20  pounds frequently is supported by substantial evidence.

21  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

22    ALJ 2 cited Pagen's opinion that plaintiff could carry 20

23  pounds occasionally.  Tr. 290.  However, ALJ 2 also gave

24  "partial weight" to Dr. Lieuallen's opinion that plaintiff could

25  lift 10 to 15 pounds.  Id.  ALJ 2 similarly gave "partial

26  weight" to the RPFCA opinion that plaintiff could lift and/or

27  carry 10 pounds on a frequent basis.  Tr. 290, 200.

28    The ALJ is "entitle[d] to draw inferences logically

Page 8 - OPINION AND ORDER

flowing from the evidence." <u>Sample v. Schweiker</u>, 694 F.2d 639,
642 (9th Cir. 1982).  The sole inquiry is whether the record,
read as a whole, yields such evidence as would allow a
reasonable mind to accept the conclusions reached by the ALJ.
<u>Id.</u>  ALJ 2 logically inferred plaintiff could frequently lift
less than 10 pounds, an amount in the mid-range of fairly
consistent opinion evidence regarding plaintiff's lifting
capabilities.  ALJ 2's finding that plaintiff could lift less
than 10 pounds on a frequent basis is rational and supported by
substantial evidence.

B. <u>ALJs' Bias</u>

Plaintiff argues "[r]ather than properly evaluate all
evidence favorable and unfavorable to [plaintiff], the ALJ's
[sic] simply chose to pick the facts that supported the ultimate
conclusion they intended to reach..." Doc. 10, pg. 13.
Plaintiff points to ALJ 1's paraphrasing of Dr. Belza's November
4, 2002 note: "[Dr. Belza] interpreted the incidental finding as
an annular tear within the foramina on the left at L4-5 that
could be the source of the claimant's pain." Tr. 14.

Dr. Belza's note stated, "[t]here is an annular tear
within the foramina on the left at L4-5.  I believe this is the
source of the patient's symptomatology along with the disk."
Tr. 145.  Plaintiff argues ALJ 1 abused his discretion by
rewording the note.  Plaintiff's argument is unconvincing.

First, the "symptomatology" Dr. Belza referred to on
November 4, 2005 was:

> low back pain with radiation into the left lower
> extremity in an L5 distribution.  She describes pain,
> numbness and tingling with low back pain of 8 to 10 on

Page 9 - OPINION AND ORDER

>        a 10-pain scale... She does describe the last three
>        days of numbness and tingling in the left upper
>        extremity but no neck pain.

Tr. 144-45. ALJ 2 found plaintiff had an impairment that could

reasonably be expected to produce those symptoms. Tr. 288-89.

However, ALJ 2 did not find plaintiff's statements regarding the

severity of those symptoms credible. <u>Id.</u>

    Second, to succeed in a bias claim, plaintiff must show

that "the ALJ's behavior, in the context of the whole case, was

so 'extreme as to display clear inability to render fair

judgment.'" <u>Bayliss v. Barnhart</u>, 427 F.3d 1211 (9th Cir. 2005).

A reasonable interpretation of Dr. Belza's note is that the

source of plaintiff's symptomology was some combination of the

annular tear and the disk. To then conclude that the annular

tear could be the source of plaintiff's pain is a reasonable

interpretation of the note, supported by substantial evidence in

the record. This court may not second guess that

interpretation. <u>Bowser</u>, 121 Fed. Appx. at 243.

    Plaintiff argues ALJ 2 failed to properly evaluate

plaintiff's lower extremity problems, and erred in concluding

"the evidence suggests there are no neurological deficits."

Doc. 10, pg. 15, tr. 289. Plaintiff asserts "[t]he ALJ's

conclusion was remarkable in that Dr. Belza's examination,

testing, and plan regarding Plaintiff's documented neurological

deficits were unquestionably present." Doc. 10, pg. 15. In

reaching this conclusion, plaintiff disregards the results of

the electrical studies of plaintiff's lower extremities ordered

by Dr. Belza on April 25, 2005. Tr. 217, 220-21.

    On February 21, 2005, Dr. Belza examined plaintiff for the

Page 10 - OPINION AND ORDER

first time in over two years. Tr. 218. The neurological examination revealed "motor strength is 5/5 in all lower extremity motor groups. Sensory is grossly intact over all lower extremity dermatomes..." Tr. 219. Approximately two months later, Dr. Belza's April 25, 2005 note stated, "[o]n examination, she has good strength in the lower extremities and decreased sensation in the lateral aspect of the foot on the right. She has decreased sensation in the lateral aspect of the left calf. Motor strength is 2+ in the knees bilaterally, absent in the ankles bilaterally." Tr. 217. The April 25, 2005 plan stated "MRI scan has been declined at this time and therefore we will proceed with electrical studies of the lower extremities. She will return to see me following that." Id.

The May 11, 2005 electrical findings were: "Bilateral sural sensory, peroneal motor, and tibial motor NCS were normal. Monopolar needle EMG of the bilateral LE's was normal. The patient was very uncomfortable [sic] during testing so paraspinal testing was deferred. Interpretation: Normal examination. There is no electrodiagnostic evidence of a lower extremity radiculopathy, plexopathy, or mononeuropathy." Tr. 220-21. ALJ 2 specifically cited to the electrical studies in finding "the evidence suggests no neurological deficits" Tr. 289.

In short, plaintiff relies on three sentences contained in one note out of plaintiff's voluminous medical record in determining ALJ 2 was biased because "[p]laintiff's documented neurological deficits were unquestionably present." Doc. 10, pg. 15. However, when viewed in the record as a whole, one sees the electrical studies were actually recommended due to the

1    "longstanding and progressive nature of Ms. Macy's
2    complaints..."  Tr. 219.  After plaintiff's insurance company
3    declined the second MRI, Dr. Belza ordered the electrical
4    studies.  Tr. 217.  Rather than verifying any condition, the
5    electrical findings showed no neurological deficits.  Tr. 221.
6    In fact, the interpretation was "Normal examination.  There is
7    no electrodiagnostic evidence of a lower extremity radiculpathy,
8    plexopathy, or mononeuropathy."  Tr. 221.

9         ALJ 2's finding that the evidence suggested plaintiff
10   suffered no neurological deficits was supported by substantial
11   evidence in the record.  Therefore, this court may not overrule
12   ALJ 2's finding in that respect.  Hammock, 879 F.2d at 501.

13        Again, plaintiff overlooks the fact that ALJ 2 did, in
14   fact, find plaintiff had a condition that could reasonably be
15   expected to produce numbness and tingling in plaintiff's legs.
16   Tr. 288-89.  However, as discussed below, ALJ 2 found
17   plaintiff's statements concerning the intensity, persistence and
18   limiting effects of the numbness not entirely credible.  Tr.
19   289.

20   C. Duty to Further Develop Record

21        Plaintiff argues ALJ 2, in determining plaintiff's RFC,
22   relied on opinions formed prior to the progression of
23   plaintiff's lower extremity problems.  Thus, plaintiff argues
24   ALJ 2 had a duty to further develop the record.  I note that
25   plaintiff fails to cite to a specific medical record
26   demonstrating her condition had progressed to the point she is
27   unable to work.  Specifically, Dr. Belza commented on
28   plaintiff's ability to work on November 4, 2002, when he found

Page 12 - OPINION AND ORDER

plaintiff capable of light duty work. Tr. 144-45. Although
plaintiff makes much out of the April 25, 2005 note finding some
decreased sensation, Dr. Belza did not provide a new
categorization of plaintiff's work capacity. Further, Dr.
Belza's recommendation of the second MRI (which plaintiff's
insurance company denied) on February 21, 2005, was not in
response to objective medical findings of a progressive
condition, but in response to the "longstanding and progressive
nature of Ms. Macy's complaints..." Id.

Plaintiff also argues that additional limitations should
have been posed by ALJ 2 in the hypothetical given to the VE.
Attorney for plaintiff asked VE 2 to answer the following
hypothetical: "being that a person has breaks, where they need
to lay down, and these occur six times a day for 15-20 minutes
at a time, would that rule out all competitive employment?" Tr.
406. The VE responded "yes". Id. However, an ALJ need only
include limitations supported by substantial evidence in the
record and found by the ALJ to be credible. Bayliss v.
Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005). Plaintiff did
not meet her burden of proving any additional limitations based
on the progression of her condition were warranted.

"An ALJ's duty to develop the record further is triggered
only when there is ambiguous evidence or when the record is
inadequate to allow for proper evaluation of the evidence."
Baines v. Astrue, 2008 WL 5210666 *6 (C.D. Cal. 2008)(internal
citations omitted). The record here was adequate for the ALJ to
properly evaluate the evidence.

D. Credibility

    Plaintiff argues ALJ 2's credibility determination was not supported by substantial evidence. Doc. 10, pp 20-21. In addition, plaintiff argues the ALJs misrepresented facts in order to discredit plaintiff. Id. at 21.

    The ALJ conducts a two-part test when assessing a claimant's subjective testimony. Tommasetti v. Astru, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the ALJ determines whether the claimant produced objective medical evidence of an underlying medical impairment that could reasonably be expected to produce some degree of symptom. Id. If so, and absent any evidence of malingering, the ALJ must present specific, clear and convincing reasons for rejecting claimant's testimony regarding the severity of the symptoms. Id. The purpose of part two of the test is for the ALJ to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Id.; citing Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

    At step one, ALJ 2 found "claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms[.]" Tr. 289. ALJ 2 found plaintiff alleged the following symptoms: "[s]he feels pain in her back and legs. She experiences numbness and tingling in her legs. She has difficulties lifting and/or carrying weight, walking, standing and sitting. Her mobility is limited. She is fatigued and depressed." Tr. 288.

    However, ALJ 2 found "claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms
are not entirely credible." Tr. 289.  ALJ 2 proceeded to
provide specific, clear and convincing reasons for disputing
plaintiff's subjective testimony:

> The record reveals inconsistencies between the claimant's
> subjective complaints and the results of objective testing.
> Karen Pagen, PT, noted issues regarding the reliability and
> accuracy of the claimant's reported pain and limitations.
> Ms. Pagen concluded the claimant "can do more... than she
> currently states or perceives" (Exhibit 12F/14).  This
> finding weakens the claimant's credibility.
>
> The evidence in the record reflects the claimant's
> functional limitations are not as significant and limiting
> as has been alleged by the claimant.  As discussed above,
> her daily activities are quite involved.  She is able to
> drive an automobile, which enables her to perform grocery
> shopping and other household errands.  She is functionally
> independent with regard to her personal hygiene and
> financial affairs.  Therefore, the claimant's daily
> activities suggest a level of functioning greater than what
> she has alleged in her application and testimony.
>
> While the claimant asserts numerous subjective complaints,
> the record reveals she has received only conservative and
> routine treatment.  Her treating physicians report no
> significant abnormalities in strength or range of motion.
> The evidence suggests no neurological deficits.  (Exhibits
> 2F, 9F, and 10F/4/6).  She has not been hospitalized for
> any significant period of time.  She has declined a repeat
> MRI and more aggressive forms of treatment such as
> additional steroid injections and surgery.  Her treatment
> history contains significant gaps, including very little
> medical evidence from January 2003, through April 2004.
> The claimant reports that she obtained Vicodin "from
> friends" during this period (Exhibits 9F/6 and 10F/2).
> These facts suggest the claimant's impairment does not
> result in significant functional limitation, which
> precludes her from engaging in basic work activity.

Id.

    As stated by the Ninth Circuit, "[i]t may well be that a
different judge, evaluating the same evidence, would have found
[plaintiff's] allegations of disabling pain credible. But, as we
reiterate in nearly every case where we are called upon to
review a denial of benefits, we are not triers of fact.

Page 15 - OPINION AND ORDER

Credibility determinations are the province of the ALJ." <u>Fair v. Bowen</u>, 885 F.2d 597, 604 (9th Cir. 1989). When an ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, the reviewing court will not second-guess the ALJ's decision. <u>Id.</u>

The Ninth Circuit does not use "a mechanical formula in determining whether properly supported reasons for an adverse credibility determination are 'clear and convincing.'" <u>Schow v. Astrue</u>, 272 Fed. Appx. 647, 652 (9th Cir. 2008). Instead, the reviewing court "must evaluate whether the determination is supported by substantial evidence, i.e., relevant evidence that a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (internal citation omitted). If the reasons ALJ 2 gives for discounting plaintiff's testimony are supported by substantial evidence in the record, this court will not disturb ALJ 2's adverse credibility finding. <u>Tommasetti</u>, 533 F.3d at 1040.

Plaintiff argues ALJ 2 erroneously found plaintiff was able to complete household chores and declined to pursue more aggressive treatments (including surgery, nerve root injections, and a second MRI). <u>Id.</u> Defendant concedes these findings were in error but argues the error was harmless. Doc. 11, pg. 14.

ALJ 2 relied on, and cited to, a number of specific instances in the record influencing her determination of plaintiff's credibility. Tr. 288-89. First, ALJ 2 stated, "[t]he record reveals inconsistencies between the claimant's subjective complaints and the results of objective testing.

Karen Pagen, PT, noted issues regarding the reliability and accuracy of the claimant's reported pain and limitations.  Ms. Pagen concluded the claimant 'can do more...than she currently states or perceives' (Exhibit 12F/14).  This finding weakens the claimant's credibility."  Id.; quoting Tr. 239.  As stated above, ALJ 2 gave "significant weight" to Pagen's opinion evidence.  Id.

ALJ 2 also noted plaintiff was able to drive an automobile.  Tr. 289.  Plaintiff went grocery shopping.  Id. Plaintiff is functionally independent with regard to her physical hygiene and financial affairs.  Id.  Thus, ALJ 2 found plaintiff's "daily activities suggest a level of functioning greater than what she has alleged in her application and testimony."  Id.

Next, ALJ 2 found the record revealed plaintiff received only conservative and routine treatment.  Id.  Plaintiff's treating physicians reported no significant abnormalities in strength or range of motion.  Id.  As described above, the evidence suggested plaintiff had no neurological defects.  ALJ 2 noted plaintiff had not been hospitalized for a significant amount of time.  Id.  ALJ 2 also noted that plaintiff's treatment history contained significant gaps, including a period of roughly 15 months during which plaintiff obtained Vicodin from friends.  Id.

ALJ 2 cited clear and convincing evidence, supported by substantial evidence in the record, regarding plaintiff's credibility as to the severity and limitations of her ailments. ALJ 2's error in finding plaintiff was able to complete

Page 17 - OPINION AND ORDER

1    household chores and declined to pursue more aggressive

2    treatment was harmless because it is clear from the record that

3    these errors are inconsequential to the ultimate nondisability

4    determination. <u>Schow</u>, 272 Fed. Appx. at 653. ALJ 2 properly

5    cited to specific evidence in the record to determine

6    plaintiff's credibility. I find ALJ 2 did not arbitrarily

7    discredit plaintiff's testimony.

8         Plaintiff next argues ALJ 2 erred in rejecting plaintiff's

9    testimony regarding depression. However, ALJ 2 noted

10   "claimant's treating physician reports that her depression is

11   'completely controlled' with medication." Tr. 287 (quoting tr.

12   344). "Impairments that can be controlled effectively with

13   medication are not disabling for the purpose of determining

14   eligibility for SSI benefits." <u>Warre v. Commissioner</u>, 439 F.3d

15   1001, 1006 (9th Cir. 2006). Thus, ALJ 2 found plaintiff's

16   depression was not a severe medically determinable impairment.

17   Tr. 287. Although ALJ 2 found plaintiff's impairment could

18   produce depression, ALJ 2 did not believe the totality of

19   plaintiff's symptoms rendered her disabled. Tr. 288-89.

20        Finally, plaintiff argues ALJ 2 erred by failing to

21   provide reasons for rejecting plaintiff's allegations of

22   suffering debilitating side effects from medicine. Doc. 10, pp.

23   22-23. Plaintiff, however, fails to point to any objective

24   evidence in the record demonstrating that the side effects of

25   plaintiff's medication interfered with her ability to work.

26   Therefore, ALJ 2 did not err in rejecting plaintiff's subjective

27   claims regarding the severity of her side effects. See

28   <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1164 (9th Cir. 2001)(ALJ did

not err by not including side effects from medication in
hypothetical to VE when, although there were passing mentions of
the side effects in claimant's medical records, "there was no
evidence of side effects severe enough to interfere with
Osenbrock's ability to work."); Thomas v. Barnhart, 278 F.3d
947, 960 (9th Cir. 2002)(ALJ properly rejected claimant's
subjective statements of side effects caused by pain medication
by using ordinary techniques of credibility evaluation in
finding claimant not generally credible).

Because ALJ 2 provided specific, clear and convincing
reasons for finding plaintiff unreliable, and because these
findings were supported by substantial evidence in the record,
ALJ 2's finding that plaintiff was not credible is not error.

E. Past Relevant Work

Plaintiff argues ALJ 2 erred in finding plaintiff could
perform past relevant work as an assembler of small products or
a housekeeper.  Doc. 10, pp 23-25.  Because the VE testimony
contradicts information contained in the Dictionary of
Occupational Titles ("DOT"), and because ALJ 2 made no findings
to address or justify any reliance on the deviation, ALJ 2's
findings at step four constitute error.  Johnson v. Shalala, 60
F.3d 1428, 1435 (9th Cir. 1995).  However, an error that is
inconsequential to the ultimate nondisability decision is
harmless error.  Tommasetti v. Astrue, 533 F.3d at 1042-43.
Consequently, a step four error is harmless when, as here, the
ALJ makes a valid, alternative step five finding.  Id.

F. Job of Garment Sorter

Defendant concedes that the job of garment sorter requires

Page 19 - OPINION AND ORDER

lifting up to 20 pounds on an occasional basis.  Doc. 11, pg.
20.  Because ALJ 2 did not address and resolve this deviation
with the RFC determination that plaintiff could lift 10 pounds
on an occasional basis, ALJ 2 erred in finding plaintiff could
perform the job of garment sorter.  Johnson, 60 F.3d at 1435.
However, because ALJ 2 also found plaintiff could perform the
job of assembler - sporting goods and electronics worker -
assembly semiconductor, ALJ 2's finding that plaintiff could
perform work as a garment sorter was inconsequential to the
ultimate nondisability determination, and thus harmless error.
Tommasetti, 533 F.3d at 1042-43.

### CONCLUSION

The Commissioner's decision is based on substantial
evidence, and is therefore, affirmed. This case is dismissed.
IT IS SO ORDERED.

Dated this  14   day of May 2009.


                              /s/ Ann Aiken
                              Ann Aiken
                    United States District Judge